

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| FRANKLIN SANDOVAL NELSON,<br><br>Plaintiff,<br><br>vs.<br><br>JIM CROYMANS, CHIEF OF POLICE, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; CITY OF SISSETON, A MUNICIPAL CORPORATION; AND ROBIN WEINKAUF, A/K/A/ ANGER SKIDMORE (PROSECUTRIX), IN HER OFFICIAL AND INDIVIDUAL CAPACITIES;<br><br>Defendants. | 1:21-CV-01007-CBK<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on defendant Jim Croymans' motion for summary judgment for all claims asserted against him in his individual capacity, pursuant to Federal Rule of Civil Procedure 56(a). Doc. 29.

## I.  BACKGROUND

Franklin Sandoval Nelson was prosecuted in South Dakota State Court in the City of Sisseton in Roberts County, for charges of rape in the third degree. The State court convicted Nelson on October 24, 2014. On January 27, 2019, on collateral review, a state court granted Nelson's petition for habeas relief, overturning his conviction.

The state habeas court concluded that Nelson deserved a new trial because relevant and important evidence had not been presented to the jury at the time of the trial. The conviction rested primarily on the credibility of the victim, Robin Weinkauf. Nelson's counsel in his habeas proceeding uncovered a Department of Criminal Investigation ("DCI") report containing the results of a DNA exam of Weinkauf's

clothing from the incident, which crucially did not contain Nelson's DNA. At the time of the original trial, the DCI report was available, or at least in law enforcement and the prosecutions' possession. However, both the prosecuting attorney, Kerry Cameron, and Nelson's defense counsel, Timothy J. Cummings, testified that they were unaware of the DCI report's existence at the time of the trial. The habeas court concluded that the DCI report was material to the case, and that its absence deprived Nelson of his right to a fair trial. It went on to conclude that Mr. Nelson was owed a new trial. However, the habeas court "[did not find] that the D.C.I. Report establishes Nelson's innocence." FINDINGS OF FACT AND CONCLUSIONS OF LAW, doc. 19-1 at 4. The charges against Nelson were dismissed by the state's attorney a few weeks later, on February 21, 2019.

On February 18, 2021, Mr. Nelson filed a claim, pro se, under 42 U.S.C. § 1983, alleging that the defendants acted under "color of state law," and violated several of his Constitutional rights. Specifically, Mr. Nelson filed suit against Jim Croymans, Chief of Police of the City of Sisseton, in his official and personal capacities; the City of Sisseton; Kerry M. Cameron, former Roberts County State's attorney in his official and individual capacities; Tim Zempel, Roberts County Commissioner, in his official and individual capacities; Roberts County; Timothy J. Cummings, in his official and individual capacities; Robin Weinkauf, a/k/a/ Anger Skidmore (prosecutrix), in her official and individual capacities; Brent Fluke, Warden for Mike Durfee State Prison, in his official and individual capacities; Darin Young, Warden of the South Dakota State Prison, in his official and individual capacities; and Robert W. Dooley, former Warden of Mike Durfee State Prison, in his official and individual capacities. Nelson claims that defendants violated his Constitutional rights under the Fifth, Sixth, and Fourteenth Amendments, as well as his rights under Brady v. Maryland,[1] United States v. Bagley,[2] and Giglio v. United States.[3] Nelson further alleges that defendants violated these rights by subjecting him to malicious prosecution and unlawful incarceration from 2014 to 2019, being

---

[1] 373 U.S. 83 (1963).
[2] 473 U.S. 667 (1985).
[3] 405 U.S. 150 (1972).

2

deliberately indifferent, and carrying out their respective responsibilities with gross negligence.

This Court has already granted motions to dismiss filed by former Warden Dooley, Warden Fluke, Warden Young, former State's Attorney Cameron, Roberts County Commissioner Zemple, and Mr. Cummings. See docs. 26–28.

Chief Croymans is a party to this suit because he was the Chief of Police for Sisseton during Mr. Nelson's prior criminal proceedings and was "familiar with the facts and circumstances of the criminal investigation concerning Nelson." AFFIDAVIT OF JIM CROYMANS, doc. 34 at 2.

Mr. Croymans filed a motion for summary judgment to dismiss Nelson's claims against him in his individual capacity on September 30, 2021, doc. 30. The Police Chief contends he is shielded from individual liability on grounds of qualified immunity. On October 12, 2021, Mr. Nelson filed his "Affidavit Opposing Jim Croymans' Affidavit and Motion for Summary Judgment." Doc. 37. Finally, Chief Croymans replied to plaintiff's filing on October 21, 2021. This matter is now ripe for adjudication.

## II.   DISCUSSION
### A. Legal Standard
#### 1. *Summary Judgment*

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Bedford v. Doe, 880 F.3d 993, 996 (8th Cir. 2018). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986) (internal quotations omitted).

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248. That is, to make summary judgment inappropriate, there must be a factual dispute concerning facts the existence or nonexistence of which "'must be outcome determinative under prevailing law.'" Walls v. Petrohawk Props., LP, 812 F.3d 621 (8th Cir. 2015) (*quoting* Grey v. City of Oak Grove, Missouri, 396 F.3d 1031, 1034 (8th Cir. 2005)).

Thus, in accordance with Rule 56(c), the party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Upon such a showing, the burden shifts to the non-movant to present affirmative evidence, beyond the pleadings, showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986). To meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-movant must be able to "show there is sufficient evidence to support a jury verdict in [its] favor." Nat'l Bank of Com. v. Dow Chem. Co., 165 F.3d 602, 607 (8th Cir. 1999). After this exercise, "we view the facts and the inferences to be drawn from them in the light most favorable to the nonmoving party." Northport Health Servs. of Arkansas, LLC v. Posey, 930 F.3d 1027, 1030 (8th Cir. 2019). "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation." Zayed v. Associated Bank, N.A., 913 F.3d 709, 720 (8th Cir. 2019).

It requires noting that complaints by pro se plaintiffs' must "be given liberal construction." Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015); accord Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an

allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Solomon, 795 F.3d at 787 (*quoting* Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)). But "the court need not act as a clairvoyant, trying to read the tea leaves of a pro se motion to determine what the movant actually seeks. A litigant, even a pro se one, bears some responsibility for advocating for himself." In re Heyl, 609 B.R. 194, 202 (B.A.P. 8th Cir. 2019).

## 2. *Qualified Immunity*

Qualified immunity is a doctrine that "shields a government official from liability unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Franklin v. Peterson, 878 F.3d 631, 634–35 (8th Cir. 2017) (*quoting* Burns v. Eaton, 752 F.3d 1136, 1139 (8th Cir. 2014)).

In determining whether a defendant is entitled to qualified immunity this Court must determine whether "(1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of violation." Rogers v. King, 885 F.3d 1118, 1121 (8th Cir. 2018). *See also* Raines v. Counseling Assocs., Inc., 883 F.3d 1071, 1074 (8th Cir. 2018), as corrected (Mar. 6, 2018). "To deny qualified immunity, the answer to both questions must be yes." Cravener v. Shuster, 885 F.3d 1135, 1138 (8th Cir. 2018). Either inquiry may be addressed first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). It is a high bar to pierce a law enforcement officer's qualified immunity: "Qualified immunity 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" New v. Denver, 787 F.3d 895, 899 (8th Cir. 2015) (*quoting* Hunter v. Bryant, 502 U.S. 224, 229 (1991)).

Within the specific context of Brady violations brought against law enforcement officials such as Chief Croymans via 42 U.S.C. § 1983, *not* the prosecution, "an investigating officer's failure to disclose exculpatory evidence does not constitute a Brady violation in the absence of bad faith." Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016) (*citing* White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008). "'Brady

5

ensures that the defendant will obtain relief from a conviction tainted by the State's nondisclosure of materially favorable evidence, regardless of fault, but the recovery of § 1983 damages requires proof that a law enforcement officer other than the prosecutor *intended to deprive the defendant of a fair trial*.'" Stewart v. Wagner, 836 F.3d 978, 982 (8th Cir. 2016) (*quoting* Villasana v. Wilhoit, 368 F.3d 976, 980 (8th Cir. 2004) (emphasis in original)). Unlike for prosecutors, where the question of a Brady violation is "'irrespective of the good faith or bad faith of the prosecution,'" here Mr. Nelson must plead that Croymans himself acted in bad faith or intentionally withheld any Brady material. Helmig, 828 F.3d at 760 (*quoting* Brady v. Maryland, 373 U.S. 83, 87 (1963)).

### B. Whether Croymans can be Found Liable Under 42 U.S.C. § 1983 for Prosecution's Failure to Provide *Brady* Material

Here, Mr. Nelson fails to properly plead, or provide any indicia of evidence, that Chief Croymans has intentionally or in bad faith suppressed Brady material from the plaintiff's prior criminal proceeding. Even when construing the plaintiff's allegations favorably, they cannot withstand summary judgment.

First, Mr. Nelson accuses all defendants of "intentional wrongdoing," including defendant Croymans. However, Nelson seeks to rest on conclusory allegations devoid of substantive pleading. The plaintiff cannot overcome a motion for summary judgment with mere recitals of malfeasance without further pleading or evidence. Tellingly, in what Nelson titled "Plaintiff's Affidavit Opposing Jim Croymans' Affidavit and Motion for Summary Judgment," he only accuses the Sisseton Police of "forg[etting] to send various court documents," not intentional wrongdoing or bad faith practices by Croymans. Doc. 37 at 1. Further, both plaintiff's complaint and subsequent filing repeatedly argue that Croymans would be liable because of a "habit or custom" of the Sisseton Police Department. Id. at 2; COMPLAINT, doc. 1 at 4. But any theory of liability derived from a habit or custom of the Police Department would fall under Monell v. Department of Social Services, not against Mr. Croymans in his individual capacity. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–95 (1978).

Per Croymans' affidavit, the South Dakota DCI Forensic Laboratory's practice was to send relevant reports and test results to both the Sisseton Police Department *and* the State's Attorney's office. AFFIDAVIT OF JIM CROYMANS, doc. 34 at 2. Operating under this common practice, it stretches beyond the imagination to conclude Croymans acted in bad faith by assuming common practices were met in this instance, specifically by assuming that State's Attorney Kerry Cameron received the DCI report finding no DNA from Mr. Nelson on the tested clothing. In Nelson's state collateral review, the South Dakota Fifth Judicial Circuit noted that "[b]y all appearances, [April 16, 2014] is the date [the report] was mailed to the Sisseton Police Department *and* then-Roberts County State's Attorney Kerry Cameron. The Court has no reason to believe that the report was not mailed on that date." FINDINGS OF FACT AND CONCLUSIONS OF LAW, doc. 19-1 at 2 (emphasis added). Further, Croymans has "never been involved with the disclosure of evidence to a defendant or his attorney in a criminal proceeding. Those decisions and actions have always been made and taken by the prosecutor." AFFIDAVIT OF JIM CROYMANS, doc. 34 at 2. Based on the record before the Court, Mr. Nelson has failed to show there was any bad faith or intentional wrongdoing on the part of Mr. Croymans.

While Mr. Nelson was successful on collateral review demonstrating the failure of the prosecution to provide Brady material in his prior criminal proceedings, that does not equate to a successful § 1983 claim against law enforcement personnel who were involved in the antecedent investigation or who may have assisted the State's Attorneys office in the prosecution. Further, it is typically outside the purview of law enforcement to be charged with the responsibility of providing exculpatory evidence to the defense. In a United States Court of Appeals for the Second Circuit case approvingly cited by our Eighth Circuit: "It is appropriate that the prosecutors, who possess the requisite legal acumen, be charged with the task of determining which evidence constitutes Brady material that must be disclosed to the defense. A rule requiring the police to make separate, often difficult, and perhaps conflicting, disclosure decisions would create unnecessary confusion." Walker v. City of New York, 974 F.2d 293, 299 (2nd Cir.

7

1992); see Helmig v. Fowler, 828 F.3d 755, 762 (8th Cir. 2016) (quoting Walker for proposition "the police satisfy their obligations under Brady when they turn exculpatory evidence over to the prosecutors"). To impose personal liability on the part of law enforcement officers for Brady violations requires clear indicia that malfeasance was afoot. No such evidence is evident before this Court.

Because Nelson has rested on mere "speculation and conjunction," the motion for summary judgment should be granted. Zayed v. Associated Bank, N.A., 913 F.3d 709, 720 (8th Cir. 2019).

### III.  CONCLUSION

Due to Chief Croymans' protection from suit in his individual capacity pursuant to the qualified immunity he is awarded, and because Nelson has failed to plead indicia that the defendant acted intentionally or in bad faith with the concealment of Brady material, the motion for summary judgment should be granted.

IT IS HEREBY ORDERED that defendant's motion for summary judgment, doc. 29, is granted, there being no genuine issue of material fact.

DATED this 26th day of October, 2021.

BY THE COURT:

*[signature: Charles B. Kornmann]*

CHARLES B. KORNMANN
United States District Judge