

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
NORTHERN DIVISION

| | |
|---|---|
| FRANKLIN SANDOVAL NELSON, | 1:21-CV-01007-CBK |
| Plaintiff, | |
| vs. | |
| JIM CROYMANS, CHIEF OF POLICE, IN HIS OFFICIAL CAPACITY; CITY OF SISSETON, A MUNICIPAL CORPORATION; AND ROBIN WEINKAUF, A/K/A/ ANGER SKIDMORE (PROSECUTRIX), IN HER OFFICIAL AND INDIVIDUAL CAPACITIES; | **MEMORANDUM AND ORDER** |
| Defendants. | |

This matter is before the Court on defendants Jim Croymans, in his official capacity, and the City of Sissetons' motion for judgment on the pleadings for claims brought against them by plaintiff Franklin S. Nelson ("plaintiff), pursuant to Federal Rule of Civil Procedure 12(c). Doc. 32.

## I. BACKGROUND

Franklin Sandoval Nelson was prosecuted in South Dakota State Court in the City of Sisseton in Roberts County, for charges of rape in the third degree. The State court convicted Nelson on October 24, 2014. On January 27, 2019, on collateral review, a state court granted Nelson's petition for habeas relief, overturning his conviction.

The state habeas court concluded that Nelson deserved a new trial because relevant and important evidence had not been presented to the jury at the time of the trial. The conviction rested primarily on the credibility of the victim, Robin Weinkauf. Nelson's counsel in his habeas proceeding uncovered a Department of Criminal Investigation ("DCI") report containing the results of a DNA exam of Weinkauf's

clothing from the incident, which crucially did not contain Nelson's DNA. At the time of the original trial, the DCI report was available, or at least in law enforcement and the prosecutions' possession. However, both the prosecuting attorney, Kerry Cameron, and Nelson's defense counsel, Timothy J. Cummings, testified that they were unaware of the DCI report's existence at the time of the trial. The habeas court concluded that the DCI report was material to the case, and that its absence deprived Nelson of his right to a fair trial. It went on to conclude that Mr. Nelson was owed a new trial. However, the habeas court "[did not find] that the D.C.I. Report establishes Nelson's innocence." FINDINGS OF FACT AND CONCLUSIONS OF LAW, doc. 19-1 at 4. The charges against Nelson were dismissed by the state's attorney a few weeks later, on February 21, 2019.

On February 18, 2021, Mr. Nelson filed a claim, pro se, under 42 U.S.C. § 1983, alleging that the defendants acted under "color of state law," and violated several of his Constitutional rights. Specifically, Mr. Nelson filed suit against Jim Croymans, Chief of Police of the City of Sisseton, in his official and personal capacities; the City of Sisseton; former Roberts County State's attorney Kerry M. Cameron, in his official and individual capacities; Roberts County Commissioner Tim Zempel, in his official and individual capacities; Roberts County; Timothy J. Cummings, in his official and individual capacities; Robin Weinkauf, a/k/a/ Anger Skidmore (prosecutrix), in her official and individual capacities; Brent Fluke, Warden for Mike Durfee State Prison, in his official and individual capacities; Darin Young, Warden of the South Dakota State Prison, in his official and individual capacities; and Robert W. Dooley, former Warden of Mike Durfee State Prison, in his official and individual capacities. Nelson claims that defendants violated his Constitutional rights under the Fifth, Sixth, and Fourteenth Amendments, as well as his rights under Brady v. Maryland,[1] United States v. Bagley,[2] and Giglio v. United States.[3] Nelson further alleges that defendants violated these rights by subjecting him to malicious prosecution and unlawful incarceration from 2014 to 2019, being

---

[1] 373 U.S. 83 (1963).
[2] 473 U.S. 667 (1985).
[3] 405 U.S. 150 (1972).

2

deliberately indifferent, and carrying out their respective responsibilities with gross negligence.

This Court has already granted motions to dismiss filed by former Warden Dooley, Warden Fluke, Warden Young, former State's Attorney Cameron, Roberts County Commissioner Zemple, Mr. Cummings, and Mr. Croymans in his individual capacity. See docs. 26–28; 39.

Chief Croymans is a party to this suit because he was the Chief of Police for Sisseton during Mr. Nelson's prior criminal proceedings and was "familiar with the facts and circumstances of the criminal investigation concerning Nelson." AFFIDAVIT OF JIM CROYMANS, doc. 34 at 2. The City of Sisseton is a party to this suit because it employed Chief Croymans. See generally COMPLAINT, doc. 1 at 4.

Mr. Croymans and the City filed a motion for judgment on the pleadings to dismiss Nelson's claims against them, the City as a municipal corporation and Croymans in his official capacity, on September 30, 2021. Doc. 32. Chief Croymans and the City contend plaintiff has failed to adequately plead municipal liability on the part of Sisseton. While Mr. Nelson filed an "Affidavit Opposing Jim Croymans' Affidavit and Motion for Summary Judgment," pertaining to Croyman's motion related to liability in his individual capacity, Nelson has not filed a response to this motion.

## II.  DISCUSSION

### A. Legal Standard

Motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) apply the same legal standards used on a motion to dismiss pursuant to Rule 12(b)(6). See generally Ashley Cnty., Arkansas v. Pfizer, Inc., 552 F.3d 659, 663 (8th Cir. 2009) ("Because we are reviewing a judgment granted on the pleadings, we view all the facts pleaded by the [nonmovants] as true, and we make all reasonable inferences in [their] favor.") (citing Poehl v. Countrywide Home Loans, Inc., 52 F.3d 1093, 1096 (8th Cir. 2008)). While similar analyses are used for motions pursuant to Rule 12(c) as 12(b)(6), motions must be filed under Rule 12(c) when the moving party has already filed an answer.

When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court assumes that all facts in the complaint are true and construes any reasonable inferences from those facts in the light most favorable to the nonmoving party. Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008). To decide the motion, courts may consider the complaint, materials that are part of the public record, or materials necessarily embraced by the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). The complaint must contain "enough facts to state a claim to relief that is plausible on its face" to survive the motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . ." Id. at 555. In addition, the factual contents of the complaint must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Braden v. Walmart Stores, 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Nevertheless, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). When assessing the merits of a complaint challenged under Federal Rule of Civil Procedure 12(b)(6), a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679.

It requires noting that complaints by pro se plaintiffs must "be given liberal construction." Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015); accord Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). "[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

That said, pro se litigants must still present cognizable legal claims to this Court. Although the Court must accept as true any well-pleaded facts, the Court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an

allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." Solomon, 795 F.3d at 787 (*quoting* Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)). But "the court need not act as a clairvoyant, trying to read the tea leaves of a pro se motion to determine what the movant actually seeks. A litigant, even a pro se one, bears some responsibility for advocating for himself." In re Heyl, 609 B.R. 194, 202 (B.A.P. 8th Cir. 2019).

### B. Suit Against Croymans in Official Capacity is Same as Suit Against City Itself

Because a claim against a municipal official – such as a police chief – in his official capacity is analogous to suit against the municipal agency itself, any claims against Mr. Murphy in his official capacity should be dismissed. See Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (*citing* Brandon v. Holt, 469 U.S. 464, 471–72 (1985)).

### C. Whether Croymans Acted Pursuant to an Official Policy or Custom of Sisseton

Municipalities are not liable under Section 1983 "solely because it employs a tortfeasor." Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 985 (8th Cir. 2016) (*citing* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Instead, "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." Id. (*citing* Atkinson v. City of Mountain View, 709 F.d 1201, 1214 (8th Cir. 2013)). Because plaintiff does not argue Chief Croymans acted pursuant to a Sisseton official policy, theories of liability are examined on whether there was an unofficial custom or deliberate indifference on the part of the City in regard to training or supervising the Chief.

While a municipal policy is a "'deliberate choice to follow a course of action,'" custom is less rigidly defined. Jane Doe A v. Special Sch. Dist. of St. Louis Cnty., 901 F.2d 642, 645 (8th Cir. 1990) (*quoting* Pembaur v. City of Cincinnati, 475 U.S. 469, 483

5

(1986)). Instead, custom relates to a "pattern of 'persistent and widespread' unconstitutional practices which become so 'permanent and well settled' as to have the effect and force of law." Id. at 646 (quoting Monell, 436 U.S. at 691). The United States Court of Appeals for the Eighth Circuit has further defined what constitutes a valid claim for municipal liability derived from an unofficial custom: (1) "[t]he existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) [d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) [t]hat plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation." Id.

To satisfy the first prong concerning widespread and persistent pattern of unconstitutional misconduct by ASD's employees, the unconstitutional practices must be "so 'permanent and well settled' as to have the effect and force of law.'" Id. (quoting Monell, 436 U.S. at 691). See also Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986 (8th Cir. 2016) ("To trigger municipal liability based on unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law.") (citing Ware v. Jackson Cnty., 150 F.3d 873, 880 (8th Cir. 1998)). To advance such a theory of liability, Nelson "must prove 'the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees.'" McReynolds v. Schmidli, 4 F.4th 648, 656 (8th Cir. 2021) (quoting Malone v. Hinman, 845 F.3d 949, 955 (8th Cir. 2017)). Without such notice through complaints by the allegedly aggrieved, it would be impossible for a governmental entity to exercise deliberate indifference over misconduct by its employees. Importantly, "[l]iability for an unconstitutional custom or usage . . . cannot arise from a single act." McGautha v. Jackson Cnty., Missouri, Collections Dep't, 36 F.3d 53, 57 (8th Cir. 1994) (citing Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)).

Here, plaintiff's arguments about the existence of any purported policy or custom derive to one theory of liability, when straining the complaint liberally in Nelson's favor: that law enforcement, such as Chief Croymans, as a "custom or habit," do not turn over exculpatory evidence pursuant to Brady to criminal defendants. COMPLAINT, doc. 1 at 4. Because no actual policy is identified by Mr. Nelson, the Court proceeds to examine whether there is an unofficial policy or custom exercised by the City for which liability may be found.

Because Mr. Nelson relies on "threadbare recitations of the elements" for a claim of municipal liability, he cannot withstand Croymans' motion for judgment on the pleadings. Crest Const. II, Inc. v. Doe, 660 F.3d 346, 357 (8th Cir. 2008) (*citing* Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)). First, Nelson fails to explain beyond conclusory statements *how* there is an unofficial policy or custom of law enforcement – *not* the State's attorneys office – intentionally withholding Brady material from criminal defendants. Second, there is no *pattern* to establish municipal liability. Nelson only discusses the *singular instance* of the failure of the prosecution in his case to provide exculpatory evidence, namely the DCI report confirming none of his DNA on the clothing of the victim. But "[l]iability for an unconstitutional custom or usage . . . cannot arise from a single act." McGautha v. Jackson Cnty., Missouri, Collections Dep't, 36 F.3d 53, 57 (8th Cir. 1994) (*citing* Wedemeier v. City of Ballwin, 931 F.2d 24, 26 (8th Cir. 1991)).

Due to Nelson relying only on one instance of a failure to provide Brady material on the part of the Sisseton Police Department, even assuming this was intentional, he cannot make a case for municipal liability on his pleadings. Thus, any theory of liability to the City of Sisseton for an unofficial custom exercised by Chief Croymans should be dismissed.

### D. Whether the City was Deliberately Indifferent in its Supervision or Training of Croymans

Next, the Court must examine whether the City can be found liable under a failure to supervise or train theory of liability related to the actions of Chief Croymans.

As the supervisor to Chief Croymans, the City may only be found liable "'if [it] directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.'" Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (*quoting* Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997)).

Municipal agencies may be found liable for a failure to train under § 1983 "where the failure to train amounts to *deliberate indifference* to the rights of persons with whom [Sisseton] came into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added). The plaintiffs must "establish that [Sisseton] had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Thelma D. v. Bd of Educ. of City of St. Louis, 934 F.2d 929, 934 (8th Cir. 1991). See also Canton, 489 U.S. at 396 (O'Connor, J., concurring in part and dissenting in part); Larkin v. St. Louis Hous. Auth. Dev. Corp., 355 F.3d 1114, 1117–18 (8th Cir. 2004).

However, the Supreme Court has made clear that such a theory of "municipal" liability may only apply in "limited circumstances." Canton, 489 U.S. at 387 (Majority Opinion). To do otherwise would be to "go forward under § 1983 on a lesser standard of fault would result in *de facto respondeat superior* liability on municipalities," which was firmly rejected by the United States Supreme Court in Monell. Id. at 392. Further, "[i]t would also engage the federal courts in an endless exercise of second-guessing municipal employee-training programs. This is an exercise we believe the federal courts are ill suited to undertake, as well as one that would implicate serious questions of federalism." Id. And "[u]nder § 1983, 'a claim for failure to supervise requires the same analysis as a claim for failure to train.'" Atkinson v. City of Mountain View, Missouri, 709 F.3d 1201, 1216 (8th Cir. 2013) (*quoting* Robinette v. Jones, 476 F.3d 585, 591 (8th Cir. 2007)). Lastly, "[t]his 'rigorous standard' requires proof that the 'supervisor had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right.'" Davis v. Buchanan Cnty., Missouri, 11 F.4th 604, 624 (8th Cir. 2021) (*quoting* S.M. v. Krigbaum, 808 F.3d 335, 340 (8th Cir. 2015)). "'Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability.'" Id. (*quoting* Atkinson, 709 F.3d at 1216).

Here, the City cannot be found to be deliberately indifferent when there is no meaningful pleading that the City had notice of any purported withholding of Brady evidence by Chief Croymans, or that there was any supposed failure to train or supervise the Chief. Because Nelson fails to venture beyond threadbare recitals of municipal liability, he cannot withstand judgment on the pleadings when he rests on the conclusory statement that the City has a "custom or habit of its police report and may be known" (sic). COMPLAINT, doc. 1 at 4. When seeking to decipher his pleadings liberally in his favor, it is still not within the realm of a properly pleaded failure to train or supervise theory claim. Municipal liability should only be imposed in "limited circumstances." City of Canton v. Harris, 489 U.S. 378, 387 (1989). This is not such a circumstance, and the motion should be granted.

### III. CONCLUSION

Because the plaintiff has not adequately pleaded liability on the part of the City of Sisseton, the City and Chief Croymans – who only remains party to this suit in his official capacity – should be dismissed from this lawsuit.

IT IS HEREBY ORDERED that defendants' motion for judgment on the pleadings, doc. 32, is granted.

DATED this 26th day of October, 2021.

BY THE COURT:

*Charles B. Kornmann*
CHARLES B. KORNMANN
United States District Judge